NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted June 18, 2008[*]
Decided June 26, 2008

**Before**

JOHN L. COFFEY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-3431

| | |
|---|---|
| JANE STOLTEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 05 C 2159 |
| | |
| JOHN BROWN, et al., | Michael P. McCuskey, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

Claiming that she was arrested without probable cause for trespassing on the main campus of the University of Illinois and that she was jailed for five days on excessive bail, Jane Stoltey sued the university's board of trustees and two members of

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. Fed. R. App. P. 34(a)(2).

the university police department under 42 U.S.C. § 1983.  The district court granted summary judgment for the defendants.  We affirm.

Stoltey has a long and rocky history with the university.  Though she says she is not homeless, she is often seen sleeping on campus and carrying shopping bags holding personal belongings.  Since the late 1970s, when she was first arrested for stealing and exploding fireworks on campus, Stoltey has been the subject of numerous complaints based on her behavior in the Illini Union building.  Students, visitors and university employees have reported, among other complaints, that Stoltey has pestered them at events, hoarded leftover food, and played her radio in a bathroom while sleeping there.  Because the building is not open to the public, the university has issued her at least five no-trespass letters over the last 25 years warning that she is not allowed inside.

Most recently, on three occasions in the spring of 2003, building service workers saw Stoltey tear down "daily event sheets" posted inside the Illini Union.  In June 2003, the university served Stoltey with a no-trespass letter listing the dates of those incidents and explaining that her actions had obstructed the day-to-day business of the building.  The letter warned Stoltey that she was not authorized to enter the Illini Union and that, if she did, she would be arrested for criminal trespass.  Six days later, the university gave Stoltey another letter telling her that the ban would expire on June 2, 2004.

Despite the no-trespass letters, Stoltey was again seen in the building on July 18, 2003.  Corporal John Brown and another university police officer were dispatched to remove Stoltey but could not find her.  Brown nevertheless wrote a police report after interviewing Susan Sanders, a building-services employee who reportedly saw Stoltey ride an elevator to the second floor and enter a restroom.  Sanders told Brown that she had known Stoltey for several years and recognized her by sight.  Before writing the report, Brown confirmed that the university had issued a valid no-trespass letter to Stoltey.  In his report, Brown described Stoltey as "homeless" because, as he explained at summary judgment, he often had seen her on campus carrying shopping bags with personal possessions, and a month earlier he had found her sleeping on campus at 3:00 a.m.  Even though the no-trespass letter listed an address for Stoltey, he based his assessment on his experience, explaining that several individuals in the community lived on the streets despite having a mailing address.

A month later, an assistant state's attorney filed an information charging Stoltey with criminal trespass to real property based on the July 18 incident.  A state-court judge found that probable cause existed to arrest Stoltey, issued an arrest warrant, and

set bail at $2,500. On July 27, a deputy sheriff arrested Stoltey. Brown was not involved in obtaining the warrant or arresting Stoltey. Stoltey remained in jail until August 1, when she was able to post bond. The charge was dismissed, however, in October 2004.

In October 2005, Stoltey filed an amended complaint naming as defendants the board of trustees, Corporal Brown, and Brown's boss, Krystal Fitzpatrick, who at that time was the assistant director of public safety at the university. The district court was unable to parse any federal claims from this complaint, but dismissed it without prejudice as to the individual defendants so that Stoltey could try again to formulate claims against them personally. The court concluded, however, that sovereign immunity and other hurdles precluded Stoltey from suing the board or bringing official-capacity claims against the other defendants. In her second amended complaint, as interpreted by the defendants without objection, Stoltey claimed that Brown and Fitzpatrick had caused her to be arrested without probable cause in violation of the Fourth Amendment. According to Stoltey, she was arrested and jailed because Brown had "falsely" stated in his police report that she was homeless, and because Brown and Fitzpatrick had not adequately investigated the July 18 incident.

The defendants moved for summary judgment. They included, as required by Federal Rule of Civil Procedure 56 and Local Rule 7.1, a statement of undisputed material facts. They argued that summary judgment was appropriate as to Fitzpatrick because she had no personal involvement in the police report, the arrest, or the bond hearing. They also contended that summary judgment was appropriate as to Brown because he was not involved in the charging decision, the arrest, or the bond hearing and could not be held accountable for any Fourth Amendment violation related to the arrest based solely on having written a truthful police report. Stoltey, however, did not file a response complying with Local Rule 7.1, despite having been advised of the requirements in writing by the district court. Instead, she merely expressed disagreement with some of the defendants' facts and said she would present testimony at trial to support her version of events. The court granted summary judgment to the defendants, accepting their statement of undisputed facts and finding that there was "no basis for Plaintiff's claims."

On appeal Stoltey argues that the district court erred in granting summary judgment because, she says, material issues of fact exist. Although Stoltey continues to disagree with some of the content of the defendants' statement of undisputed facts, the district court did not abuse its discretion in accepting the entire document as true because Stoltey did not comply with Local Rule 7.1. *See Koszola v. Bd. of Educ. of the City*

*of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Rule 56 instructs that if the adverse party does not properly respond to a motion for summary judgment, summary judgment "should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). Local Rule 7.1 requires the non-movant to submit one list identifying those material facts on which the parties agree and a separate list, supported by evidence, of those still in dispute. *See* C.D. Ill. R. 7.1(D)(2)(b)(1),(2). Stoltey did not include either list in her response, and we have repeatedly said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required. *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Koszola*, 385 F.3d at 1109. Moreover, the district court notified Stoltey, a pro-se plaintiff, of the requirements for a response to a motion for summary judgment and the consequences of failing to comply and provided her with a copy of Rule 56(e). *See Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). Thus, in our de novo review we rely on the defendants' statement of undisputed facts but view these facts in the light most favorable to Stoltey. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

The district court correctly granted summary judgment to the defendants because no genuine issue of material fact exists. *See Wagner v. Washington County*, 493 F.3d 833, 835-36 (7th Cir. 2007). Stoltey claims that she was arrested without probable cause because, she alleges, Corporal Brown falsely represented in his police report that she was homeless and the prosecutor presumably relied on that report when applying for the arrest warrant. But whether she was homeless is irrelevant to the question of probable cause to arrest her for criminal trespass. *See* 720 ILCS 5/21-3(a)(2); *United States v. Kincaid*, 212 F.3d 1025, 1028 (7th Cir. 2000). Stoltey also contends that Brown failed to properly investigate whether she actually entered the Illini Union on July 18 and whether Sanders was reliable, but Brown was under no duty to investigate further. *See Beauchamp v. City of Noblesville*, 320 F.3d 733, 743-44 (7th Cir. 2003) (reasoning that complaint of single witness is generally sufficient to establish probable cause unless officer has reason to doubt witness); *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (holding that "report from a single, credible" witness can be basis for probable cause). Stoltey additionally failed to produce evidence that Brown concealed or destroyed security-camera footage that, she says, would have confirmed that she was not in the building that day.

Finally, Stoltey alleges that, after she was arrested, the judge required her to post bail rather than release her on her own recognizance because the police report--again,

falsely, according to her--said she was homeless.  She thus claims that she was wrongfully jailed for five days while raising the cash for her bond.  But there is no evidence in the record that Brown deliberately or recklessly stated that Stoltey was homeless, much less that the representation in the police report that she was homeless affected the judge's decision to set bail, so no constitutional violation occurred.  *See Mannoia v. Farrow*, 476 F.3d 453, 458 (7th Cir. 2007); *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000).  And to the extent that Stoltey has sued Fitzpatrick on the basis of these same claims, summary judgment was proper because Fitzpatrick was not personally involved in writing the police report, obtaining the arrest warrant, arresting Stoltey, or setting her bail.  *See Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Stoltey also argues on appeal that the district court abused its discretion in refusing to enlist pro bono counsel to assist her.  In reviewing her three motions, the magistrate judge and district court applied the correct standard and concluded that she could competently litigate the case given its level of complexity, *see Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).  In any event, an attorney could not have salvaged Stoltey's case because her claims are legally groundless, *see id*. at 659; *Dellenbach v. Hanks*, 76 F.3d 820, 823 (7th Cir. 1996).

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED