THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JAMES C. BEIL, Defendant-Appellee.

Second District   No. 81—645

Opinion filed November 12, 1982.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A.
Preiner, Assistant State's Attorney, and Phyllis J. Perko and Cynthia N.
Schneider, both of State's Attorneys Appellate Service Commission, of coun-
sel), for the People.

Stephen M. Deitsch and Thomas Callum, both of Callum, Anderson &
Deitsch, of Wheaton, and Jay Messinger, of Chicago, for appellee.

JUSTICE NASH delivered the opinion of the court:

The State appeals from a pretrial order suppressing evidence
seized from the trunk of defendant's car after a warrantless search
alleged to have been conducted in violation of defendant's constitu-
tional rights. We reverse.

On October 6, 1980, Detective James Romani of the Oak Brook
Police Department was stationed in an unmarked squad car in the
Oak Brook Shopping Center parking lot. At approximately 8 p.m.,
Romani observed a maroon Cadillac with three occupants driving in
the parking lot and stop near the officer's car. The driver of the ma-
roon Cadillac exited the car and opened its trunk; Romani could not
observe the driver's further actions while at the trunk. Romani made

a radio check of the license plates which revealed that the car was registered to defendant, James Beil, at 4820 South Keeler in Chicago. The car was not reported as stolen nor was it wanted for any reason; however, Romani recalled that he had heard the name "Beil" on a prior occasion with regard to auto thefts in Chicago.

Subsequently, the driver got back into the maroon Cadillac and drove out of the parking lot. Romani was aware that parking lots in the area had a relatively high incidence of auto theft, and he followed the Cadillac across 22d Street and into the parking lot of the nearby Sheraton Hotel. There, Romani observed the maroon Cadillac parked in a driving aisle behind a 1967 white Cadillac convertible which was in "exceptional condition." A man wearing a plaid shirt was standing next to the maroon Cadillac in apparent conversation with the driver. Romani parked his car nearby and entered the hotel where he contacted another detective, Michael Golz, who was apparently watching that parking lot. The two detectives exchanged their observations and Golz informed Romani that he had seen the man in the plaid shirt duck down between the two Cadillacs. Romani left the hotel and noticed that the maroon Cadillac had backed up and that the white Cadillac was pulling out of its stall. Both cars, with the white Cadillac leading, then proceeded towards the 22d Street exit of the parking lot; at that time there were two persons in the maroon Cadillac and one person in the white Cadillac.

Romani and Golz stopped both cars at the exit and identified themselves as police officers. While defendant and the other passenger of the maroon Cadillac were producing identification, Romani went to the white Cadillac where he observed that its ignition had been pulled and that there was a "slam hammer" still attached to it; there was a screw driver on the front seat.

Romani made a radio check of the license plates of the white Cadillac and learned it was registered to a Joseph Klingler, who was not one of the three men in the two cars. Romani returned to the Sheraton Hotel where he contacted Klingler who stated he had not given anyone permission to use his car. Upon returning to the automobiles, Romani noticed a vise grip and an Allen type wrench on the back seat of the maroon Cadillac. The three men were thereupon arrested and were taken to the police station with the two cars.

At the station, Romani and Golz searched the maroon Cadillac, including the trunk, and discovered additional burglary tools and other items; the search was conducted without a warrant and without Beil's consent. He was subsequently charged with felony theft and possession of burglary tools based upon his alleged accountability for the

theft of the white Cadillac and constructive possession of those tools found in the white Cadillac.

Prior to trial, defendant moved to suppress the introduction of the property taken from his car trunk contending that the initial stop and subsequent search of his automobile were in violation of the fourth and fourteenth amendments to the United States Constitution. After an evidentiary hearing, the trial court determined that the initial stop of the defendant and seizure of those tools found in the back seat of his car met constitutional standards; however, the court suppressed those tools and other property found in the trunk of Beil's car.

Generally, the fourth amendment requires police to obtain a warrant prior to the search or seizure of persons or property. However, it is recognized that a police officer may stop and temporarily detain a person for the purpose of a limited investigation absent probable cause to arrest him if the officer is able to point to specific and articulable facts which, taken together with reasonable inferences drawn from the officer's experience, would reasonably warrant the extent of the intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Beck v. Ohio* (1964), 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223; *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280.) In the case of an automobile, if the officer's investigation uncovers facts which give probable cause to believe that a crime has been committed and that evidence of that crime is contained in the vehicle in which the suspect is riding, the officer may conduct a search of the vehicle without a warrant. (*Michigan v. Thomas* (1982), 458 U.S. 259, 73 L. Ed. 2d 750, 102 S. Ct. 3079; *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157; *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280.) Given probable cause, the permissible scope of such a warrantless search is as broad as that which a magistrate could have legitimately authorized by warrant. Thus, the search may extend to every part of the vehicle, and its contents, that may conceal the object of the search. (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157; *People v. Clark* (1982), 92 Ill. 2d 96.) The permissible areas of search include the trunk of the vehicle. (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157; *People v. Carter* (1967), 38 Ill. 2d 496, 232 N.E.2d 692, *cert. denied* (1968), 391 U.S. 965, 20 L. Ed. 2d 877, 88 S. Ct. 2033.) The fact that the suspect may have been arrested and is without access to the vehicle or that the vehicle has been immobilized and taken to the station house does not obviate the justification to conduct the warrant-

less search. The probable cause that develops at the scene still obtains at the station house. *Michigan v. Thomas* (1982), 458 U.S. 259, 73 L. Ed. 2d 750, 102 S. Ct. 3079; *Texas v. White* (1975), 423 U.S. 67, 46 L. Ed. 2d 209, 96 S. Ct. 304; *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.

We conclude that the initial stop of the defendant and the subsequent search of his car met constitutional standards. Prior to the stop, Officers Romani and Golz each observed defendant and his companions engage in a course of conduct which caught their professional attention as police officers. This included stopping in the shopping center parking lot and opening the trunk of the car, then immediately exiting that lot and proceeding to another parking lot. There defendant parked his car behind the white Cadillac convertible and engaged in conversation with a man standing by the two cars who then ducked down between them. When the white Cadillac was then driven towards the exit defendant followed it in his car. At that point, based upon these observations and Romani's association of Beil's name with auto thefts, the officers had specific and articulable facts upon which to base a belief that further investigation was warranted. Their stop of defendant for that purpose was therefore proper.

After the stop, upon seeing the pulled ignition in the white Cadillac and the tools used to remove it, the officers verified with its owner that no one had permission to drive the car. The officers then had probable cause to believe that defendant was engaged in the theft of the white Cadillac and further upon seeing the additional tools on the back seat of defendant's maroon Cadillac, the officers also had probable cause to believe that evidence relating to the theft of the white Cadillac may be contained in defendant's car. The officers were then justified in searching the entire car, including the trunk, for such evidence. (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157.) Neither the fact that the officers delayed the search until the car was safely at the station nor that they obtained additional information regarding defendant's identity and ownership of the maroon Cadillac diminished the justification for the search. (*Michigan v. Thomas* (1982), 458 U.S. 259, 73 L. Ed. 2d 750, 102 S. Ct. 3079.) We conclude the trial court erred in suppressing those items found in the trunk of defendant's car.

Defendant has relied upon *People v. Reincke* (1980), 84 Ill. App. 3d 222, 405 N.E.2d 430, and *People v. Rinaldo* (1980), 80 Ill. App. 3d 433, 399 N.E.2d 1027, *appeal denied* (1980), 81 Ill. 2d 586, to support his argument. However, the facts presented by those cases are inap-

posite and the analysis applied preceded and is inconsistent with the definitive rulings of *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, and *People v. Clark* (1982), 92 Ill. 2d 96.

For the foregoing reasons the order of the circuit court of Du Page County is reversed and this cause remanded for further proceedings.

Reversed and remanded.

UNVERZAGT and VAN DEUSEN, JJ., concur.